# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| EUNICE BECK | * | CIVIL ACTION NO. 05-0983 |
| VERSUS | * | JUDGE JAMES |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Plaintiff, Eunice Beck ("Beck"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

Introduction

Beck filed an application for benefits on April 14, 2003, alleging a disability onset date of December 23, 2002, due to residuals from surgery for breast cancer, later complicated by treatment for Hepatitis C. (Tr. 13). After conducting a hearing, Administrative Law Judge ("ALJ") Charles R. Lindsay denied Beck's claim on November 24, 2004. (Tr. 12-21). The ALJ found that Beck's impairments from an earlier mastectomy and from Hepatitis C were "severe" within the meaning of the Commissioner's regulations, but not severe enough to meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (hereinafter *Listing*). (Tr. 17). Continuing his analysis, the ALJ reviewed the relevant medical evidence and concluded that Beck retained a residual functional capacity ("RFC") to perform light work[1] with

---

[1] The Commissioner's regulations define light work as:
involv[ing] no more than 20 pounds at a time with frequent lifting or carrying of

the following limitations: (1) an inability to perform more than occasional climbing, balancing, kneeling, crouching, squatting, crawling, or stooping; and (2) an inability to perform more than frequent overhead reaching with the left upper extremity. (Tr. 19). Based on this RFC, the ALJ next turned to whether Beck could perform her past relevant work, which, according to the ALJ, was as a "cashier/checker" at a convenience store. (Tr. 20). Citing to the vocational expert's testimony from the hearing, the ALJ concluded that Beck "could return to her past relevant work as cashier/checker as previously performed and as generally performed in the national economy." (Tr. 20). Alternatively, the ALJ stated that considering Beck's RFC:

> along with her age, education and work experience, and based on the opinion of the vocational expert [that Beck could work as a cashier II, a ticket seller, and short order cook], relied upon by the undersigned, medical-vocational rule 202.07, as used as a framework for decision making, would support a conclusion of "not disabled."

(Tr. 20). Based on these findings, the ALJ denied Beck's application.

Standard of Review; Substantial Evidence

This Court will uphold an ALJ's determination that a claimant is not disabled if the findings of fact upon which it is based are supported by substantial evidence, and if it was derived from a proper application of relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). While substantial evidence lies

---

objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). At no time should the Court "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth

Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, Beck alleges the following points of error in the above analysis: (1) the ALJ improperly concluded that she could perform her past relevant work; (2) the ALJ failed to articulate good cause for rejecting her treating physician's opinions; and (3) the ALJ failed to consider the impact of her fatigue and medications' side effects on her ability to perform sustained work activity.

Past Relevant Work

Beck challenges the ALJ's finding that she could perform her past relevant work, arguing that, even assuming the correctness of the ALJ's finding that her residual functional capacity is

4

for light work, her prior job, which the ALJ classified as "cashier/checker," also required her to cook, an occupation which is classified as medium work under the Dictionary of Occupational Titles. According to Beck, ALJ improperly concluded that she could perform her past relevant work even though she could not perform all the duties of her prior job. *See Valencia v. Heckler*, 751 F.2d 1082, 1086-7 (9th Cir. 1985). Because her prior job frequently required her to cook, Beck claims that substantial evidence does not support the ALJ's classification of her past relevant work at the light level assigned to a "cashier/checker" job. Instead, Beck claims that her past relevant work was as a cashier/cook, that it therefore should have been classified as medium level work, and that, in accordance with the opinion of the vocational expert, Beck's RFC for light work did not allow her to do the cooking duties of her job. Therefore Beck claims that she cannot perform her past relevant work.

The undersigned finds that the ALJ's classification of Beck's past relevant work as a "cashier/checker" mischaracterizes the nature of her past work and is not supported by substantial evidence. Beck's unrefuted testimony was that her job duties involved not only working as a cashier, but also cooking and stocking shelves. Becks' situation is analogous to that of the claimant in the case of *Armstrong v Sullivan,* 814 F.Supp. 1364 (W.D. Tex. 1993). In *Armstrong,* the claimant's job at a barbecue restaurant involved both cooking and working as a cashier. The court held that the job was a "composite" one and that all of the duties needed to be considered together. The duties could not be considered separately from one another as though the claimant had two separate jobs. *Id.* at 1372. The *Armstrong* court quoted from Social Security Ruling 82-61 as follows: "[c]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the facts of each individual case."

Thus, in determining whether the claimant could perform her past relevant work, the ALJ

was not free to ignore the claimant's more strenuous job duties, nor to base his findings solely on the claimant's less demanding ones. Because the record clearly shows that the claimant's past relevant work was at a medium level and that the claimant can not perform work at such a level, the undersigned recommends that this matter be reversed and remanded for additional proceedings in accordance with Step Five of the sequential analysis.

Rejection of Treating Physician's Opinions

Beck also claims that the ALJ did not provide good cause for rejecting a functional assessment performed by her treating physician, Dr. Gordon Massengale ("Massengale").[2] Beck claims that rather than performing his own functional assessment, the ALJ should have either contacted Massengale for an explanation of his opinions or obtained an assessment from a consultative physician. The undersigned agrees.

Although treating physicians' opinions are normally entitled to controlling weight, an ALJ may discount such opinions when good cause exists. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Good cause traditionally exists "where a treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-6 (5th Cir. 2000). Pursuant to the Commissioner's regulations, an ALJ's decision to deny controlling weight to a treating physician's opinion must demonstrate a consideration of the following: (1) the physician's length of treatment of the claimant; (2) the

---

[2] Beck also challenges the ALJ's rejection of an earlier opinion from Massengale that Beck was "totally disabled." (Tr. 97). However, as stated in the Commissioner's regulations, such an opinion is not considered a medical opinion to the extent that it simply decides an ultimate issue; therefore, it is afforded no special significance and may be summarily rejected. *See* 20 C.F.R. § 404.1527(e) & (e)(3); *see also* Tr. 19 ("the undersigned rejects Dr. Massengale's opinion that the claimant is disabled, insofar as it relates to the ultimate finding of disability").

6

physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(d)(2); *Newton*, 209 F.3d at 456. If an ALJ determines that a treating physician's records are inconclusive or otherwise inadequate, the Commissioner's regulations provide that an ALJ should seek clarification or additional evidence from the treating physician or, in the alternative, order a consultative examination of the claimant. *See* 20 C.F.R. § 404.1512(e) and (f).

In a social security medical assessment form dated January 5, 2004, Massengale, who was not only Beck's treating physician, but also was the only physician who offered any opinion regarding Beck's physical impairments, opined that Beck could stand for no more than 15 minutes at a time; sit for no more than 2 hours at a time; work for zero hours; occasionally lift ten pounds (with one arm only) and frequently lift no pounds; occasionally bend, stoop, manipulate with her right hand, and raise her right arm above shoulder level; and frequently manipulate with her left hand and raise her left arm above shoulder level. (Tr. 310). Massengale assigned Beck a pain level of moderate and suggested that she would need to elevate her legs frequently during an eight-hour workday. (Tr. 310).

In his decision, the ALJ provided a lengthy discussion of Massengale's assessment, and concluded that it was not well supported by other evidence in the record. (Tr. 18). Specifically, the ALJ stated that the assessment's "reference to limitations involving the right arm when [Beck's] left arm is the affected limb detracts from the overall credibility of [Massengale's] opinion." (Tr. 18). With respect to Beck's inability to stand for more than fifteen minutes and

7

need to elevate her legs, the ALJ concluded that "there is no medically determinable impairment that could reasonably be expected to produce such limitations" and that "Beck has no impairments that involve the use of her lower extremities and she has no history of lower extremity swelling." The ALJ opined that Massengale may have exaggerated Beck's limitations, and he closed with the following paragraph:

> In light of the conflicting nature of Dr. Massengale's statements, the limited post-surgery treatment required, and the claimant's demonstrated ability to return to part-time work, the [ALJ] finds that the limitations assessed by Dr. Massengale are far too restrictive and are not well supported. Although Ms. Beck may have some limitations related to her residual left arm symptoms, she is not limited in her ability to stand/walk and there is no evidence to support a restriction involving elevation of the legs. Also considered, is the fact that Dr. Massengale is the claimant's family practitioner and he is not a specialist in oncology. Therefore he does not have a medical specialty that lends itself to the evaluation of functional limitations stemming from a history of breast cancer. Based on an analysis of the above, the [ALJ] finds that Dr. Massengale's opinion is not well supported and cannot be afforded controlling weight.

(Tr. 19). Having dismissed the only function-by-function analysis in the record, the ALJ conducted his own analysis and assigned Beck an RFC to perform light work with some restrictions.

The undersigned finds that the ALJ's discussion of Massengale's assessment contains several factual errors that necessitate remand for further proceedings. First, although Beck's residuals from breast cancer surgery primarily affected her left arm, the medical records do contain instances in which Beck complained to Massengale about pain and an abscess in her right arm. Tr. 311-315. In addition, although Massengale stated that Beck's right arm was impaired, he did not say that her left one was. Therefore, his assignment of an impairment to her right arm is as likely to be the result of a simple error as it is to be the result of intentional exaggeration of Beck's condition. Thus, the ALJ erred in finding that the references to Beck's right arm in

8

Massengale's assessment detracted from its overall credibility. Instead, the references detracted from its clarity, and the ALJ should have sought a clarification before reaching a determination. Similarly, the record contains at least one instance of Beck reporting swelling in her legs and therefore undermines the ALJ's total dismissal of Massengale's opinion on Beck's ability to stand and need to elevate her legs. (Tr. 111). Finally, the record shows that Beck did suffer from side effects from the treatment for her Hepatitis C, which the ALJ failed to address in any meaningful way. Given these errors and the absence of any other functional assessment, the ALJ did not have good cause to reject Massengale's opinion.

This is not to say that the ALJ's ultimate conclusion that Beck was not disabled is incorrect. The factual errors in the ALJ's analysis of the only physician-prepared function-by function assessment in the record simply deprive that analysis of substantial support. In a case such as this, where the ALJ had doubts about the claimant's claimed impairments and questions regarding the accuracy or reliability of the treating physician's assessment, the proper approach, as suggested in the Commissioner's regulations, was to order a consultative examination and have another physician perform a function-by-function analysis. *See Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). Another alternative, as Beck suggests, would have been to seek clarification from Massengale himself as to the bases for his opinion. *See Newton*, 209 F.3d at 458 (admonishing the ALJ for not requesting additional evidence when he had expressed doubts about a treating physician's opinion). Because the ALJ did neither of these things, his decision is not supported by substantial evidence. It is therefore recommended that the decision of the Commissioner be **REVERSED, and this matter be REMANDED to the Commissioner for obtaining of a consultative examination or, in the alternative, clarification of the treating physician's opinion.**

Conclusion

For the reasons stated above, it is recommended that the Commissioner's decision to deny benefits be **REVERSED and REMANDED for further proceedings including obtaining of a consultative examination or, in the alternative, clarification of the treating physician's opinion, full consideration of the relevant evidence, and analysis of the claimant's ability to work pursuant to Step Five of the sequential analysis.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of April, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE